Pearson, C. J.
 

 The effect of every deed of trust, like that under consideration, is “ to hinder and delay” creditors, because it deprives them of a direct and prompt mode of collecting their debts
 
 bg fieri faeias
 
 and sheriff’s sale.
 

 A debtor at any time before his creditors obtain a lien, has a right to make a preference in favor of some, to the exclusion of others.
 

 
 *318
 
 In order to reconcile these two conflicting rights, the law, as established by the adjudications of onr courts, allows a debtor, who is in
 
 failing circumsiances,
 
 to make a deed of trust, and will not impute to him an intent to fraud ; provided, he does so, with a single eye to the exercise of his right to make a preference, and without any purpose, either directly or indirectly, to secure to himself anjr benefit or advantage;
 
 Palmer
 
 v.
 
 Ellis,
 
 in Equity, decided at this term, and reported in 5 Jones’ Eq. Rep. But to entitle himself to this indulgence, he must see "to it that there is no sinister design, with a view to his own interest.
 

 To rid onr case of any unnecessary complication, we concede,.at the outset, the position assumed by the counsel of the defendant,
 
 i. e.,
 
 a corporation has the same right to make a deed of trust that an individual has, and in making this concession, we assume that it follows, a corporation, in the exercise of this right, is subject to the same limitations and restrictions as -when it is exercised by an individual. It is unnecessary to refer to the many authorities cited on the argument ; such is th'e conclusion fairly to be deduced from them.
 

 Suppose one, with ample resources to pay all his debts (with money enough in bank if you please) some ten daj'S before a creditor obtains judgment, should make a deed conveying all of his property, which is subject to execution, to a trustee, for the payment of all his creditors, arranged in classes, one, two, three, four, would this deed be made with a single eye to the exercise of his right of making a preference among creditors ? that is the question. Certainly not, for there was no occasion to-make a perforen ce, as he was able to pay all; so there could be no doubt, his object was to secure an advantage for himself; he wished to have the privilege of paying his debts when it suited him, and to use his money for other purposes ; he did not choose to have his property sacrificed at sheriff’s sale, but intended to sell ujdoii his own terms, and for that purpose he put his property out of the reach of an execution. It follows, there is nothing to relieve the deed from, the imputation of being made with a fraudulent intent.
 
 *319
 
 This conclusion is so palpable, that a mere statement is the only argument that can be made about it.
 

 Such is the case now before us for consideration. Besides the land, buildings, machinery, and debts due, “ the Clarendon Iron Works company” had a fund of $250,000, unpaid stock, from which it could, b,y a call upon the share-holders, have realised an amount, which, in addition to its resources above set out, would have been much more than enough to pay off all its liabilities. Admit that Yan Bokkelen had failed, and could only answer the call to the amount of the debt due to him ; that McRae was not, at the time, reliable ; that but little could have been paid in by Drane; there were the defendants, Parsley and Latimer, bound for $26,000 each, and amply able to pay. So, the purpose of the deed of trust, wms not to prefer creditors, but to hold them off, at arms length, until the property could be disposed of and the other resources of the company be made available, and in that way secure a benefit to the share-holders by not calling on them for the portion of their subscription remaining unpaid ! thus perverting an indulgence which the hvw extends to debtors, under certain circumstances, and making it a pretext in order to effect an object for the benefit of the debtor, which the law cannot tolerate. The debts were due ; it was the duty of the company to pay them, and, although the creditors were at liberty to give further time, the debtor had no right to exact it, in the manner attempted. The conclusion that a deed of trust made by a corporation, or an individual, for the purpose of gaining time, at the expense of creditors, in order to dispose of property to advantage, and prevent a sacrifice by a sale for cash, when the company or individual, has the means and resources from which enough might be realised to pay all of the debts, is fraudulent and void as against creditors, is clearly deducible from principle, and we are glad to find, upon an examination of the authorities, that it is fully supported by them. See “ Burrill on Assignments,” 2d Ed. pages 38,39, and 40, where the cases are collected and referred to ;
 
 Planck
 
 v. Schermerhorn, 3 Barbour’s Ch. Rep. 644;
 
 Ogden
 
 v. Peters,
 
 *320
 
 15 Barbour’s Supreme Court Rep. 560, and many others, all to- the same effect. For the purpose of rebutting the imputation of fraud, the- defendants on the trial below, and in. the argument before us, relied on the fact, that the corporators had agreed among themselves, as the business was new, to commence operations on $50,000, and if upon trial, it proved profitable, other portions of the subscription could be- called for. If the company had confined its operations within tins limit, it would have-been well enough, but, unfortunately, the agreement was not observed ; for the operations were extended
 
 on credit
 
 to a large amount, based on its unpaid! stock; and when a creditor called for payment, it was no answer to tell him, “ we had agreed among themselves to make a trial on $50,000 ;” the reply is: “ true ; but that was not clone ; and honesty requires that you should meet this extended credit by calling for unpaid subscriptions to an amount sufficient to pay your debts.” Aw individual, under sne-b circumstances, would hardly have the face to say to a creditor, “ when I commenced this bnemess, I determined with myself, as it is new, only to trade on a limited sum; true, I stretched my credit, bat I do not feel hound to resort to my other resources to meet your debt, so yon must wait until I can see what can be done for you out of the sum appropriated tothe business!’’
 

 In
 
 Palmer
 
 v.
 
 Giles,
 
 the fraud was apparent on the face of the deed, and the jury had nothing to do with k;. in this case it was necessary for the jury to find the facts upon which the law pronounced the- deed to be fraudulent; bnt, notwithstanding that difference, the principle involved is the same, and this Court concurs with his Honor in the conclusion, that if the evidence was believed, there- was a presumption, of fraud, and there was no evidence to rebut it; and, we also approve of the “fair and square manner” in which his Honor met the point, and submitted- the ease to the jury; for in-cases, where, as in this, there was no- actual fraud, and- the deed is void against creditors, only by intendment of law, upon tbe facts disclosed by the evid’en-ce-, the due-administration of justice requires that the Judge should “ take the- responsibility
 
 ”
 
 
 *321
 
 of announcing the law in a manner so plain and direct, that juries cannot misunderstand tbe instructions.
 

 Per Curiam,
 

 Judgment affirmed.